IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-00883-WYD

CASEY BERNARD RODRIGUEZ,

    Applicant,

v.

R. WILEY, Warden,

    Respondent.

## ORDER OF DISMISSAL

Applicant Casey Bernard Rodriguez is in the custody of the United States Bureau of Prisons (BOP) at ADX Florence. Mr. Rodriguez initiated this action by filing a *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 challenging a prison disciplinary conviction. Pursuant to an initial review of the Application by Senior Judge Zita L. Weinshienk, the only claims remaining for consideration are (1) whether Mr. Rodriguez was entitled to due process in his Unit Disciplinary Committee (UDC) hearing in Incident Report No. 1638889, which resulted in Mr. Rodriguez's placement in general population in ADX; and (2) if he is entitled to due process was he denied the ability to call witnesses, request a staff representative at his hearing, and review adverse evidence either during or prior to his hearing. (Aug. 28, 2008, Order (Doc. # 21).) The action and the remaining two claims were ordered drawn to a district judge and to a magistrate judge, and the case was randomly assigned to me.

Upon review of the remaining claims, and finding good cause, I directed Respondent to answer and show cause why the Application should not be granted as to the remaining claims. On October 24, 2008, Respondent filed a Response and Mr. Rodriguez filed an Objection to Response (Objection) on November, 4, 2008. Respondent filed a Reply in Support of Response (Reply) on December 1, 2008, and Mr Rodriguez filed an Objection to Respondent's Replies (Second Objection) on December 22, 2008. On July 30, 2009, I ordered Respondent to provide supplemental briefing on Mr. Rodriguez's request for pre-release placement in a halfway house. Respondent filed the supplemental briefing on August 5, 2009. Mr. Rodriguez filed a Reply to the supplemental briefing on August 19, 2009.

I must construe liberally the remaining claims and all pleadings filed subsequent to the Application by Mr. Rodriguez, because he is a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). If the Application reasonably can be read "to state a valid claim on which the [applicant] could prevail, [a court] should do so despite the [applicant's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. However, I should not act as a *pro se* litigant's advocate. *See id.*

Mr. Rodriguez asserts, in the Application, that in July 2006 he was transferred to general population at ADX Florence, which he claims in essence is solitary confinement because (1) there is little or no human contact; (2) recreation is restricted to ten hours per week; and (3) all movement requires an inmate to be placed in shackles.

(Application (Doc. # 2) at 2.)[1] Mr. Rodriguez further asserts that he was moved out of general population only to be returned as a result of an incident report, I.R. 1638889,[2] during which he was not allowed to call witnesses or review the evidence against him in violation of his due process rights. (Application at 3.) Mr. Rodriguez also contends that because a general population classification affects when he will be allowed a pre-release placement in a halfway house he is entitled to due process prior to being classified as general population status. (Nov. 4, 2008, Obj. (Doc. # 28) at 4.)

Respondent argues that Mr. Rodriguez's claims are inappropriately raised in a 28 U.S.C. § 2241 action and that the Court lacks jurisdiction to consider the Application, because Mr. Rodriguez fails to assert a claim that affects the fact or duration of his confinement as is required under § 2241. (Resp. (Doc. # 27) at 1.) Respondent also argues that Mr. Rodriguez's placement in general population did not affect the duration of his sentence, and Mr. Rodriguez did not receive any sanction that changed his sentence or release date in I.R. 1638889. (Resp. at 8.) Furthermore, Respondent

---

[1] Page numbers referred to in citations to documents filed in this case are the page numbers identified by the Court's Electronic Court Filing system.

[2] As a result of his hearing in I.R. 1638889 on September 4, 2007, Mr. Rodriguez was removed from the "Step-Down Program" and placed in general population for a minimum of one year. Prior to I.R. 1638889, Mr. Rodriguez was found guilty of approximately forty-three disciplinary infractions involving multiple incidents of either possession of intoxicants, fighting with another inmate, refusing an order, involvement in a group demonstration, possession of an unauthorized item, cutting and scalding another inmate with water, punching and kicking another inmate, refusing to take alcohol test, throwing liquid on a reporting officer, threatening a reporting officer, being insolent, and assault without serious injury. He also was found to have started a fire, cut and scalded another inmate, and punched and kicked another inmate. Subsequent to I.R. 1638889, Mr. Rodriguez has been found guilty of nine disciplinary infractions including refusing restraints, refusing an order, refusing a program assignment, assault without serious injury, possession of intoxicants, possession of unauthorized property, and destruction of property of less than $100 in value. (July 30, 2009, Supp. Brief (Doc. # 41) at Part # 7.)

contends that the sanction he received did not affect Mr. Rodriguez's good-time credits. (Resp. at 3-4.)

In his November 4, 2008, Objection, Mr. Rodriguez asserts that by placing him in general population as a disciplinary sanction he was denied a "six month 10 % halfway house early release program," and he will now "do 6 months longer than before I.R. guilty finding." (Nov. 4, 2008, Obj. at 1-2.)

In Respondent's December 1, 2008, Reply, Respondent asserts that contrary to Mr. Rodriguez's argument the sanctions imposed by the UDC had no affect on the length of his sentence or his release date from prison. (Dec. 1, 2008, Reply (Doc # 31) at 2 and Brieschke Dec.) Respondent further asserts that there is no case, BOP program statement, or policy statement that stands for the proposition that placement in general population at the ADX deprives an inmate of early release to a halfway house. (Reply at 3.) Respondent also asserts that participation in the Step-Down Program may lead to a transfer to another BOP facility, but nonparticipation in the program does not deprive an inmate from early release to a halfway house. (Reply at 3.) Respondent further argues, relying on *Muhammad v. Hood*, 100 F. Appx. 782, 783 (10th Cir. 2004) (not selected for publication), and *Jordan v. Fed. Bureau of Prisons*, 191 F. Appx. 639, 651-52 (10th Cir. 2006) (not selected for publication), that a transfer to general population does not subject Mr. Rodriguez to an "atypical and significant hardship." (Reply at 4.)

In Mr. Rodriguez's December 22, 2008, Second Objection, he asserts that up to twelve months is available to an inmate for halfway house placement. (Dec. 22, 2008, Sec. Obj. (Doc. # 35) at 3.) Mr. Rodriguez also appears to argue that even though the

BOP does not have a policy or procedure, which specifically denies general population inmates from a halfway house placement, it is "common place" for general population inmates to only receive sixty-day placements in halfway houses.  (Dec. 22, 2008, Sec. Obj. at 3.)

Even if Mr. Rodriguez's placement in general population was found to affect when he would be placed in a halfway house, he is not entitled to due process in the disciplinary proceeding that resulted in his return to general population.  Mr. Rodriguez's placement in a halfway house alone does not give rise to a protected liberty interest.  To make out a due process claim, Mr. Rodriguez must assert the infringement of a protected liberty interest.  *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989).  A protected liberty interest may arise from either the Due Process Clause itself, or from a state or federal law.  *See id.; cf. Miller v. Federal Bureau of Prisons,* 989 F.2d 420, 423 n. 4 (10th Cir. 1993) (noting rule in circuits holding former federal parole statute created liberty interest).  "The Constitution does not itself afford [Mr. Rodriguez] a liberty interest in a reduced sentence.  A convicted person has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence.  *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979).

To the extent Mr. Rodriguez's claims may be construed as filed pursuant to *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007), he fails to provide evidence that BOP staff disregarded the factors set forth in 18 U.S.C. § 3621(b) in considering his placement in a halfway house and categorically denied him placement because he was housed in general population.  Under § 3621(b) the BOP is instructed to consider (1) the

resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court imposing the sentence; and (5) any pertinent Sentencing Commission policy.

In the warden's February 13, 2009, response to Mr. Rodriguez's Administrative Remedy Request No. 525134-F1, he informed Mr. Rodriguez that the Unit Team considered the severity of his offense, his institutional adjustment, public safety, as well as his specific pre-release needs before recommending a 90-120[3] day pre-release placement in a Residential Reentry Center. (Supp. Brief, Part # 5 at 4.)

Mr. Rodriguez contends, in his Reply to Respondent's supplement briefing that the recommended 90-120 day placement was a percentage of a six-month placement and that because the "Second Chance Act" increased the amount of time a prisoner may spend in a halfway house to twelve months his placement time should be increased accordingly. (Aug. 19, 2009, Applicant's Reply (Doc. # 42) at 2.) Mr. Rodriguez also argues that prior to his most recent disciplinary action he was told that the infraction was not that serious and that the result of the hearing would not affect his September placement in a halfway house, but after he pled guilty his date for placement was changed to November 6, 2009. (Aug. 19, 2009, Reply at 4.) Finally, Mr. Rodriguez argues that contrary to the warden's statement that he was evaluated in May 2008 for a

---

[3] Although Mr. Rodriguez originally was approved for up to four months in a Residential Reentry Center (RRC), subsequent to the designation he was found guilty of an attempt to destroy government property less than $100.00 in value, refusing a program assignment, and possessing intoxicants. Based on security issues, Mr. Rodriguez's four-month pre-release placement was reduced by two months. Mr. Rodriguez's release date also has been delayed due to loss of good-conduct time in at least two disciplinary proceedings. (Supp. Brief at Part # 2 and Part # 7.)

halfway house placement he actually was not evaluated until December 2008.  (Aug. 19, 2009, Reply at 5-7.)

Nothing in Mr. Rodriguez's arguments provides evidence that prison staff disregarded the factors set forth in 18 U.S.C. § 3621(b) in considering his placement in a halfway house and categorically denied him placement because he was housed in general population.  Whether Mr. Rodriguez was evaluated in May or December 2008 for a halfway house placement does not affect the prison staff's decision that 90-120 days would be the proper amount of time for Mr. Rodriguez to be placed in a halfway house.  Furthermore, Mr. Rodriguez's claims regarding his June 2009 disciplinary hearing are self-serving and fail to address that he also was found guilty of possessing intoxicants and assaulting without serious injury in June 2009 (Supp. Brief, Part 7 at 1).

Based on the above findings, I have determined that Mr, Rodriguez's release date has not been affected by his general population classification.  Furthermore, Mr. Rodriguez does not have a fundamental right, *per se,* to placement in a halfway house, and prison staff's decision to allow him only a 90-120 day placement in a halfway house was specific to Mr. Rodriguez and was within the guidelines of *Wedelstedt* and 18 U.S.C. § 3621(b).  Mr. Rodriguez, therefore, does not have a protected liberty interest that entitled him to due process in his UDC hearing.  Accordingly, it is

ORDERED that the Application is DENIED and the action is DISMISSED WITH PREJUDICE on the merits.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.

Dated: September 3, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge